UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

ANTHONY HENSEL,

                              Plaintiff,

        -against-                                           6:15-cv-0374 (LEK/TWD)

CITY OF UTICA,

                              Defendant.

_____

## MEMORANDUM-DECISION and ORDER

## I.     INTRODUCTION

        Plaintiff Anthony Hensel ("Plaintiff") commenced this action against his employer, the City

of Utica ("Defendant"), alleging violations of the Americans with Disabilities Act, 42 U.S.C. § 1210

*et seq.* ("ADA"), and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title

VII"), stemming from the denial of his disability benefits and subsequent termination of his

employment as a police officer for the City of Utica.  Dkt. No. 1 ("Complaint").  Presently before

the Court is Defendant's Motion to dismiss the Complaint for lack of subject matter jurisdiction

pursuant to Federal Rule of Civil Procedure 12(b)(1) and for failure to state a claim pursuant to

Federal Rule of Civil Procedure 12(b)(6).  Dkt. Nos. 9 ("Motion"); 9-10 ("Memorandum").

Plaintiff filed a Response and Defendant filed a Reply.  Dkt. Nos. 17 ("Response"); 18 ("Reply").

For the following reasons, the Motion is granted and the case is dismissed.

## II.    BACKGROUND[1]

Plaintiff was employed as a police officer for the City of Utica Police Department from August 8, 2003 until May 1, 2014.  Compl. ¶¶ 6, 11.  On March 9, 2008, Plaintiff was involved in a work-related accident, which resulted in his placement on paid leave pursuant to New York General Municipal Law ("GML") § 207-c for several years thereafter.[2]  Id. ¶ 13.  In addition, Plaintiff was diagnosed with diabetes in 2009, after he had fallen ill while on duty, requiring hospitalization in December 2009.  Id. ¶ 19.  He returned to "full duty" in July 2010.  Id. ¶ 20.

On March 24, 2011, Plaintiff was involved in a car accident while on duty, which exacerbated his previous injuries from the 2008 accident.  Id. ¶ 22.  Plaintiff was placed on paid leave and/or light duty pursuant to GML § 207-c.  Id. ¶¶ 22-23.  As a result of these two incidents, Plaintiff suffered from herniated discs in his cervical and thoracic spine, post-concussion syndrome, and persistent pain which prevented him from accomplishing certain job duties, lifting heavy objects, exercising, and making certain body movements.  Id. ¶ 14.

Plaintiff provided Defendant with medical documentation from Dr. Michelle Johnston ("Dr. Johnston"), which indicated that Plaintiff was significantly disabled.  Id. ¶ 16.  Defendant ordered Plaintiff to undergo an Independent Medical Examination ("IME"), which was conducted on April

_____

[1] Because this matter is before the Court on a motion to dismiss, the allegations of the Complaint are accepted as true and form the basis of this section.  See Boyd v. Nationwide Mut. Ins. Co., 208 F.3d 406, 408 (2d Cir. 2000); see also Matson v. Bd. of Educ., 631 F.3d 57, 72 (2d Cir. 2011) (noting that, in addressing a motion to dismiss, a court must view a plaintiff's factual allegations "in a light most favorable to the plaintiff and draw[] all reasonable inferences in her favor").

[2] New York General Municipal Law § 207-c provides that a municipality must pay for necessary medical treatment by reason of a municipal police officer's work-related injury.  N.Y. GEN. MUN. LAW § 207-c.

2, 2012 by Dr. Daniel L. Carr ("Dr. Carr").  Id. ¶¶ 15, 23; Dkt. No. 9-3 ("IME").[3]  The IME

revealed that Plaintiff had a normal range of motion in his cervical spine, there was no spasm, and

no tenderness.  IME at 2.[4]  The IME revealed normal reflexes and no motor deficits.  Id.  Overall,

Dr. Carr found Plaintiff's physical exam to be "benign."  Id. at 5.  Dr. Carr noted that an MRI

showed some disc disease at the C5-6 and C6-7 levels, but no definitive neural impingement.  Id.

Dr. Carr opined that there is "no way to tell for sure whether the disc disease is related to the injury

in 2008 as there were degenerative changes noted on the CT scan even at the emergency room visit

with mild loss of disc height noted."  Id.  Dr. Carr concluded "I would not find that he has a

disability from working as a police officer.  Certainly, he has pain and certainly he has some

degenerative discs but there is no medical contraindication for him working full duty without

restrictions as a police officer."  Id.  Dr. Carr found that Plaintiff had "likely achieved his point of

maximum medical improvement" and recommended that Plaintiff resume normal activities.  Id. at

6.

   Sometime in April, Defendant cut off Plaintiff's GML § 207-c benefits, which Plaintiff

believes was prompted by the IME results, and ordered Plaintiff to return to work.  Compl. ¶ 15.  He

---

   [3] Defendant has attached the results of the IME performed by Dr. Carr as an Exhibit to its Motion.  Dkt. No. 9-3.  When reviewing a motion to dismiss, a court is permitted to consider the "complaint, as well as any written instrument attached to it as an exhibit or any statements or documents incorporated by reference."  Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co., 62 F.3d 69, 72 (2d Cir. 1995) (quoting Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 47 (2d Cir. 1991).  Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint "relies heavily upon its terms and effect," which renders the document "integral" to the complaint.  Id.  The Court finds that the content of Plaintiff's IME is integral to the allegations included in the Complaint regarding Plaintiff's disability and the subsequent denial of his GML § 207-c benefits.  Accordingly, the Court will consider the content of the IME when evaluating Defendant's Motion.

   [4] The pagination corresponds to the page numbers assigned by the Court's Electronic Filing System.

was instructed to return on April 16, 2012 to "full duty and without restrictions as a police officer." Id. ¶¶ 17, 23. Plaintiff alleges that at that time, he was experiencing a great deal of pain in his head and neck and back and was unable to return to work on April 16. Id.

Plaintiff believes that his disabilities had an "adverse and stigmatic effect" on Defendant's perception of Plaintiff and ultimately prompted Defendant to terminate Plaintiff's employment. Id. ¶¶ 21, 25. Plaintiff petitioned Defendant for a hearing as to his entitlement to benefits under GML § 207-c. Id. ¶¶ 18, 24; Dkt. No. 9-6 ("Report").[5] Commissioner of Public Safety for the City of Utica, Robert Palmieri, appointed Andrew Lalonde as Hearing Officer. Report at 3. Hearings were held on August 27, 2012 and October 2, 2012. Id. In addition to reviewing the IME, the Hearing Officer considered all of Plaintiff's medical records and the testimony of Plaintiff and his wife, Gina Anelli Hensel. See generally id. The Hearing Officer found that Plaintiff's medical records showed inconsistencies in Plaintiff's recollection of his original injury, ongoing inconsistencies in the degree of pain complained of by Plaintiff, and a pattern of Plaintiff making different presentations to different doctors, with an "ultimate outcome of differing diagnoses, treatment, and job limitations." Id. at 17. The Hearing Officer concluded that Plaintiff was "not totally disabled, and can perform police officer related duties." Id. at 19. He stated that he based this assessment on the IME, the testimony of Plaintiff's physician, Dr. Buckley, as well as his own observations of Plaintiff at the two hearings. Id. at 19-20.

---

[5] Similarly, Defendant has attached as an Exhibit the Fact-Finding Report issued following a hearing that was held pursuant to Plaintiff's collective bargaining agreement, GML § 207-c and Utica City Code 2-19-96 and 2-19-98. Dkt. No. 9-6 ("Report"). Because the results of the hearing are integral to Plaintiff's Complaint, the Court will consider the content of the Report when evaluating Defendant's Motion. Moreover, the Report is a public document and is thus a proper document for the Court to review in analyzing Defendant's challenge to the Court's subject matter jurisdiction. See Kamen v. Am. Tel. & Tel. Co., 791 F.2d 1006, 1011 (2d Cir. 1986).

Plaintiff then filed a Petition pursuant to Article 78 of the New York Civil Rules and Practice with the New York Supreme Court, Oneida County. Compl. ¶ 24; Dkt. No. 9-7 ("Article 78 Proceeding"). The Supreme Court transferred the proceeding to the Appellate Division, Fourth Department on a substantive evidence question. Art. 78 Proceeding. On March 21, 2014, the Fourth Department affirmed the Hearing Officer's determination and dismissed the Article 78 Petition on the basis that the Hearing Officer's decision was supported by substantial evidence. Id.

Plaintiff contends that in retaliation for his allegation in the Article 78 proceeding that Defendant discriminated against him because of his disabilities, Defendant sent Plaintiff a letter dated April 7, 2014, notifying Plaintiff that his employment would be terminated. Compl. ¶ 25. In the letter, Defendant characterized Plaintiff's disability as "non work-related." Id. ¶ 26. On May 1, 2014, Plaintiff was fired. Id. ¶ 29. Plaintiff alleges that but for his disability, Defendant would not have terminated him on May 1, 2014. Id. ¶ 12. Plaintiff then commenced this action. Compl.

In his Complaint, Plaintiff asserts the following claims: (1) unlawful discrimination, retaliation, and failure to accommodate Plaintiff's disability in violation of the ADA; (3) unlawful discrimination and retaliation in violation of Title VII.[6] See id.

---

[6] The Complaint does not specifically articulate which causes of action Plaintiff intends to assert under the ADA and Title VII. While Plaintiff generally asserts that he intends to assert claims under the ADA and Title VII and that Plaintiff was retaliated and discriminated against, Plaintiff does not specifically articulate his causes of actions. While the Court will accept the allegations in the Complaint as true and draw all inferences in Plaintiff's favor, Plaintiff is represented by counsel and is not entitled to the same liberality afforded to *pro se* litigants. The sufficiency of Plaintiff's allegations is discussed further when evaluating Defendant's Motion to dismiss for failure to state a claim.

## III.    SUBJECT MATTER JURISDICTION

### A.  Legal Standard

When a defendant "moves for dismissal under Rule 12(b)(1), as well as on other grounds, 'the court should consider the Rule 12(b)(1) challenge first since if it must dismiss the complaint for lack of subject matter jurisdiction, the accompanying defenses and objections become moot and do not need to be determined.'" United States ex rel. Kreindler & Kreindler v. United Tech. Corp., 985 F.2d 1148, 1155-56 (2d Cir. 1993) (citation omitted).  "A claim is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." Morrison v. Nat'l Austl. Bank Ltd., 547 F.3d 167, 170 (2d Cir. 2008); see also FED. R. CIV. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").  In considering a motion to dismiss under Rule 12(b)(1), a court must accept as true all material factual allegations in the complaint and draw all reasonable inferences in favor of the plaintiff. Buday v. N.Y. Yankees P'ship, 486 F. App'x 894, 895 (2d Cir. 2012).  The plaintiff bears the burden of establishing that a court has subject matter jurisdiction by a preponderance of the evidence. Garanti Finansal Kiralama A.S. v. Aqua Marine & Trading, Inc., 697 F.3d 59, 65 (2d Cir. 2012).

### B.  Rooker-Feldman

The Rooker-Feldman doctrine establishes "the clear principle that federal district courts lack jurisdiction over suits that are, in substance, appeals from state-court judgments." Hoblock v. Albany Cty. Bd. of Elections, 422 F.3d 77, 84 (2d Cir. 2005).  "Rooker-Feldman bars a losing party in state court from seeking what in substance would be appellate review of the state judgment in a Unites States district court, based on the losing party's claim that the state judgment itself violates

6

the loser's federal rights." Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 287 (2005); see also Bridgewater Operating Corp. v. Feldstein, 346 F.3d 27, 29 (2d Cir. 2003) ("[F]ederal district courts do not have jurisdiction over claims that have already been decided . . . by a state court."); Green v. Mattingly, 585 F.3d 97, 101 (2d Cir. 2009) ("The Supreme Court in Exxon Mobil held that the [Rooker-Feldman] doctrine 'is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments'" (citing Exxon Mobil, 544 U.S. at 284)).

The Second Circuit has outlined four requirements that must be met for Rooker-Feldman to apply. Hoblock, 422 F.3d at 85. First, the federal plaintiff must have lost in state court. Id. Second, the plaintiff must complain about injuries that were caused by the state-court judgment itself. Id. Third, the plaintiff must invite the federal court to review and reject the state-court judgment. Id. Finally, the state-court judgment must have been rendered before the federal case commenced. Id. In the present case, the first and fourth prongs of Rooker-Feldman are satisfied, as Plaintiff lost in state court and the state-court judgment was rendered before the federal case commenced. Accordingly, the only issue before the Court is whether the second and third prongs of Rooker-Feldman are satisfied.

Plaintiff contends that the present action is not barred by Rooker-Feldman because the essence of Plaintiff's federal claims is that he was retaliated against because he filed an Article 78 proceeding and that the injuries complained of in the federal action are separate and distinct from those litigated in state court. Resp. at 3-4. Therefore, the injury he complains of was not caused by the state-court judgment. Id. Plaintiff argues that because he was not terminated until after the state

court issued its decision, <u>Rooker</u>-<u>Feldman</u> does not apply to bar the present action.  <u>Id.</u>

Therefore, for the purposes of <u>Rooker</u>-<u>Feldman</u>, the Court must determine whether the injuries Plaintiff complains of in the present action were caused by the state-court judgment itself. "Just presenting in federal court a legal theory not raised in state court, however, cannot insulate a federal plaintiff's suit from <u>Rooker</u>-<u>Feldman</u> if the federal suit nonetheless complains of injury from a state-court judgment and seeks to have that state-court judgment reversed.  <u>Hoblock</u>, 422 F.3d at 86.  "<u>Rooker</u>-<u>Feldman</u> bars a federal claim, whether or not raised in state court, that asserts injury based on a state judgment and seeks review and reversal of that judgment; such a claim is "inextricably intertwined" with the state judgment." <u>Id.</u> at 86-87.

### 1. ADA Claims

Defendant contends that because the state court concluded that Plaintiff was not disabled for the purposes of his eligibility for benefits under GML § 207-c, the Court lacks jurisdiction over Plaintiff's ADA claims.  Mem. at 9-10.  Specifically, Defendant argues that if the federal court reexamines the issue of whether Plaintiff was able to perform his duties as patrolman, the federal court would be reviewing and rejecting the state court's determination.  <u>Id.</u> at 12.  Plaintiff counters that the Article 78 proceeding dealt only with Plaintiff's eligibility for benefits under GML § 207-c; the issue of whether he was discriminated against under the ADA was not before the state court. Resp. at 3-4.

To state a prima facie case under the ADA, a plaintiff must show that: (1) his employer is subject to the ADA; (2) he is a "qualified individual" with a disability within the meaning of the ADA; (3) he was otherwise qualified to perform the essential functions of his job, with or without reasonable accommodation; and (4) suffered adverse employment action because of his disability.

8

<u>Heyman v. Queens Vill. Comm. for Mental Health</u>, 198 F.3d 68, 72 (2d Cir. 1999). The ADA defines the term "disability" as "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102.

The Court finds that the issue of whether or not Plaintiff is a qualified individual with a disability within the meaning of the ADA does not require relitigating the state court's determination that Plaintiff was not entitled to disability benefits under GML § 207-c, nor does it require the federal court to call into question the state court's reasoning. The essential issue before the state court was whether Plaintiff was eligible to continue receiving disability benefits under GML § 207-c, or stated a different way, whether Plaintiff was physically capable of resuming his duties as a patrolman. <u>See</u> Report at 14 ("The issue in this proceeding is whether or not the claimant, Officer Anthony Hensel, is presently disabled from performing the regular duties of a police officer for the City of Utica as a result of an accident that occurred on March 9, 2008"). For the purposes of stating an ADA claim, however, the inquiry of whether Plaintiff is a qualified individual with a disability is different than under GML § 207-c. <u>See</u> 42 U.S.C. § 12102 (stating that a plaintiff can satisfy the second element of an ADA claim in three ways, by showing "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment."). Therefore, the state court's determination that Plaintiff was able to perform his duties as patrolman is not determinative of whether Plaintiff has stated a disability under the ADA.

Moreover, Plaintiff's claim for retaliation under the ADA falls outside the scope of <u>Rooker-Feldman</u> entirely, as Plaintiff's employment was not terminated until after the state-court

9

proceedings were complete. Because Plaintiff was terminated after the Article 78 proceeding was final, Plaintiff's retaliation claim is separate and independent from the results of the Article 78 proceeding and thus falls outside of the scope of Rooker-Feldman. Accordingly, Plaintiff's ADA claims are not barred under Rooker-Feldman.

Defendant argues that the Second Circuit's decision in DiLauria v. Town of Harrison is dispositive of whether Plaintiff's claims are barred under Rooker-Feldman. 64 F. App'x 267 (2d Cir. 2003). In DiLauria, the plaintiff was terminated from his position as a police officer following a hearing at which the Police Commission determined that the plaintiff failed to obey an order to report for duty at a specific time and attend a fit-for-duty examination. Id. at 269. The plaintiff filed an Article 78 proceeding challenging the validity of the Police Commission's determination. Id. Although the plaintiff did not specifically raise his discrimination claims under the ADA or New York Human Rights Law ("NYSHRL") in his Article 78 proceeding, the Article 78 petition contained factual assertions that the defendants violated the plaintiff's rights under the ADA. Id. Following an unfavorable decision in state court, the plaintiff commenced suit in federal district court, alleging that the defendants had discriminated against him in violation of the ADA and NYSHRL. Id. The Second Circuit found that the plaintiff's ADA claims were barred under Rooker-Feldman after noting that Rooker-Feldman "is at the very least coextensive with the doctrine of collateral estoppel." Id. at 270. The Second Circuit did not conduct an independent Rooker-Feldman analysis, and instead determined that since the ADA claim was precluded on collateral estoppel grounds, it was necessarily precluded under Rooker-Feldman. Id. Although the facts in DiLauria are analogous to the present case, the approach to Rooker-Feldman employed by the Second Circuit in DiLauria has been expressly rejected by the United States Supreme Court.

10

See Exxon Mobil, 125 S. Ct. at 1521 (stating that some courts had wrongly construed the Rooker-Feldman doctrine "to extend far beyond the contours of the Rooker and Feldman cases"); Hoblock, 422 F.3d at 85 (articulating the four-factor analysis based on the Supreme Court's rejection of previous expansive interpretations of Rooker-Feldman). While the Court recognizes factual similarities between DiLauria and the present case, the Court is unpersuaded by DiLauria's flawed Rooker-Feldman analysis, which is no longer the approach used in the Second Circuit.

### 2. Title VII Claims

Similarly, the Court finds that Plaintiff's claim for discrimination and retaliation under Title VII are not barred under Rooker-Feldman because these issues were not litigated in the Article 78 proceeding and are not "inextricably intertwined" with the state court judgment. Although Plaintiff asserts in the Complaint that he "retained an attorney to fight that denial of 201-c benefits in a series of legal appeals, including an Article 78 appeal, much of which contained Plaintiff's complaints of, among other things, de facto disability discrimination," Compl. ¶ 24, the records from the state court proceedings show that the issue of whether Plaintiff was retaliated or discriminated against was not actually raised or addressed in the state-court proceedings. See Report; Art. 78 Proceeding. Therefore, Plaintiff's Title VII claims are not barred under Rooker-Feldman.

### C. Collateral Estoppel

Defendant argues that Plaintiff's claims are barred under the doctrine of collateral estoppel. 28 U.S.C. § 1738 requires federal courts to "afford the same full faith and credit to state court judgments that would apply in the State's own courts." Kremer v. Chem. Constr. Corp., 456 U.S. 461, 463 (1982). Accordingly, unless the statute that provides the basis for the federal action contains an express or implied repeal of § 1738, the federal court must apply the collateral estoppel

principles of the rendering state. See id. at 468 (finding that collateral estoppel principles applied where Title VII did not expressly or impliedly repeal § 1738); see also Givens v. City of New York, No. 11 Civ. 2568, 2012 WL 75027, at *5 (S.D.N.Y. Jan. 10, 2012) ("Since the Court is pointed to no statute that repeals section 1738 as to ADA claims, the preclusion law of New York State applies.").

Collateral estoppel bars litigants from relitigating any fact or issue that has already been fully and fairly litigated in a prior proceeding that produced a final judgment on the merits. Bank of N.Y. v. First Millenium, Inc., 607 F.3d 905, 918 (2d Cir. 2010). Under New York law, collateral estoppel "will apply only if (1) the issue in question was actually and necessarily decided in a prior proceeding, and (2) the party against whom [collateral estoppel] is asserted had a full and fair opportunity to litigate the issue in the first proceeding." Hoblock, 422 F.3d at 94. The party seeking to invoke collateral estoppel "bears the burden of proving the identity of the issues, while the party challenging its application bears the burden of showing that he or she did not have a full and fair opportunity to adjudicate the claims involving those issues." Khandhar v. Elfenbein, 943 F.2d 244, 247 (2d Cir. 1991).

The Court finds that neither of the two requirements for invoking collateral estoppel are satisfied in the present case. As previously discussed, the sole issue addressed in the state-court proceedings was whether Plaintiff was eligible to continue receiving benefits under GML § 207-c. Report at 14. The issues of whether Plaintiff was discriminated or retaliated against, or whether Defendant failed to make reasonable accommodations in light of Plaintiff's disability were not decided in the prior proceeding. Defendant argues that since Plaintiff was represented by counsel, was able to call witnesses, and was able to testify, he had a "full and fair" opportunity to litigate the

issue of whether he was disabled. Mem. at 15. However, as previously discussed, whether Plaintiff

was "disabled" within the meaning of the ADA involves a different inquiry than whether Plaintiff is

disabled for the purposes of GML § 207-c. Accordingly, Plaintiff did not have the opportunity to

litigate his discrimination, retaliation, and failure to accommodate claims in the state proceeding.

Therefore, Plaintiff's claims are not barred under the doctrine of collateral estoppel.

## IV.    MOTION TO DISMISS

### A.  Legal Standard

To survive a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil

Procedure, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to

relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009) (quoting Bell Atl.

Corp. v. Twombly, 550 U.S. 544, 570 (2007)); see also FED. R. CIV. P. 12(b)(6). A court must

accept as true the factual allegations contained in a complaint and draw all inferences in favor of a

plaintiff. See Allaire Corp. v. Okumus, 433 F.3d 248, 249-50 (2d Cir. 2006). A complaint may be

dismissed pursuant to Rule 12(b)(6) only where it appears that there are not "enough facts to state a

claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. Plausibility requires

"enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the alleged

misconduct]." Id. at 556. The plausibility standard "asks for more than a sheer possibility that a

defendant has acted unlawfully." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556). "[T]he

pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands

more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. (citing Twombly,

550 U.S. at 555). Where a court is unable to infer more than the mere possibility of the alleged

misconduct based on the pleaded facts, the pleader has not demonstrated that she is entitled to relief

and the action is subject to dismissal.  See id. at 678-79.

**B. Discussion**

*1. ADA Claims*

Defendant argues that Plaintiff's ADA claims are subject to dismissal because Plaintiff has failed to state a claim under the ADA.  Mem. at 15-19.  The ADA prohibits employers from discriminating against workers with disabilities.  Specifically, the ADA provides:

> No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

42 U.S.C.A. § 12112 (2009).  ADA claims are analyzed under the familiar burden-shifting analysis established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  Reg'l Econ. Comm. Action Program, Inc. v. City of Middletown, 294 F.3d 35, 48 (2d Cir. 2002) (analyzing ADA claim under McDonnell Douglas burden-shifting framework).  Under this framework, a plaintiff alleging disability discrimination carries the initial burden of establishing a prima facie case.  Ryan v. Grae & Rybicki, P.C., 135 F.3d 867, 869 (2d Cir. 1998).  If a plaintiff asserts a prima facie case, the burden then shifts to the employer to provide a legitimate, nondiscriminatory reason for its decision.  Reg'l Econ. Comm. Action Program, 294 F.3d at 49.  If the employer meets that burden, the plaintiff must then prove that the employer's proffered reason was false and a pretext for discrimination.  Id.

As previously discussed, to state a prima facie case under the ADA, a plaintiff must show that: (1) his employer is subject to the ADA; (2) he is a "qualified individual" with a disability within the meaning of the ADA; (3) he could perform the essential functions of his job, with or without reasonable accommodation; and (4) he suffered adverse employment action because of his

14

disability.  <u>Heyman</u>, 198 F.3d at 72.

Plaintiff indisputably satisfies the first and fourth elements.  The City of Utica, which encompasses the Utica Police Department, is a qualified "employer" because it is "engaged in an industry affecting commerce" and employs "15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year."  42 U.S.C. § 12111(5)(A); <u>see also</u> <u>Giordano v. City of New York</u>, 274 F.3d 740, 747 (2d Cir. 2001) (finding that New York City Policy Department was a qualified employer under the ADA).  As to the fourth element, Plaintiff's termination from the Utica Police Department constitutes an "adverse employment action."  42 U.S.C. § 12112(a) (prohibiting discrimination with regard to "discharge of employees").

Defendants argue that Plaintiff cannot satisfy the second element of the prima facie case, that he was actually disabled under the ADA.  Mem. at 15-19.  The ADA defines the term "disability" as "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment."  42 U.S.C. § 12102.  The Equal Employment Opportunity Commission ("EEOC") is the agency responsible for implementing the ADA; consequently, courts defer to EEOC regulations construing the ADA's terms.  <u>Giordano</u>, 274 F.3d at 747.

a.  <u>Physical or Mental Impairment that Substantially Limits a Major Life Activity</u>

The EEOC defines a "physical or mental impairment" as a "physiological disorder or condition" that affects one or more body systems, including the musculoskeletal and endocrine systems.  29 C.F.R. § 1630.2(h)(1).  To qualify as a disability under the ADA, the relevant impairment must "substantially limit[] one or more of the major life activities."  42 U.S.C. § 12102(2)(A).  The term "major life activity" encompasses, *inter alia*, the ability to perform

manual tasks, sitting, reaching, lifting, bending, and working. 29 C.F.R. § 1630.2 (i). The operation of a major bodily function, such as the endocrine and musculoskeletal systems, also qualify as major life activities. Id. § 1630.2(ii).

The term "substantially limits" shall be "construed broadly in favor of expansive coverage, to the maximum extent permitted by the terms of the ADA." Id. § 1630.2(j)(i). "An impairment need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting." Id. § 1630.2(j)(ii). The EEOC has cautioned that "[t]he primary object of attention in cases brought under the ADA should be whether covered entities have complied with their obligations and whether discrimination has occurred, not whether an individual's impairment substantially limits a major life activity." Id. § 1630.2(j)(iii). Therefore, determining whether an impairment substantially limits a major life activity "should not demand extensive analysis." Id.

Whether a person is disabled under the ADA "requires an 'individualized and fact-specific' examination." Krikelis v. Vassar Coll., 581 F. Supp. 2d 476, 485 (S.D.N.Y. 2008) (quoting Colwell v. Suffolk Cty. Police Dep't, 158 F.3d 635, 643 (2d Cir. 1998)). A court should consider the following factors in determining whether a plaintiff is substantially limited in a major life activity: (i) the nature and severity of the impairment; (ii) the duration or expected duration of the impairment; and (iii) the long-term impact, or expected long-term impact of or resulting from the impairment. 29 C.F.R. § 1630.2(j)(2).

Plaintiff contends that he has adequately pleaded that he is disabled within the meaning of the ADA. Resp. at 11. Plaintiff asserts that "herniated discs in his cervical and thoracic spine, post-concussion syndrome, and pain . . . substantially interfered with major life activities insofar as he

was prevented from accomplishing certain job duties, lifting heavy objects, exercising, and even making certain movements with his body that would be routine or a "typical" body-movement for a non-disabled individual." Compl. ¶ 14. Plaintiff's initial injuries occurred on March 9, 2008, after which he was placed on medical leave until July 2010, when he returned to work without restriction.[7] Id. ¶¶ 13, 20. Plaintiff was also diagnosed with diabetes in 2009, however the Complaint does not include any allegations as to how this diagnosis impacted Plaintiff's ability to work. Id. ¶ 19. Plaintiff alleges that his initial injuries were exacerbated by a car accident on March 14, 2011, which again required him to be placed on medical leave. Id. ¶¶ 22-23. Plaintiff asserts that he was in a great deal of pain in his head, neck, and back at the time Defendant ordered him to return to work on April 16, 2012. Id. ¶ 17.

Even after accepting all of Plaintiff's allegations as true, and drawing all inferences in his favor, the Court finds that Plaintiff has not put forward sufficient information for the Court to find that Plaintiff was disabled within the meaning of the ADA. Although Plaintiff describes the nature of his impairments, the Complaint is inadequate as to their severity, duration, or impact. Compare Delgado v. Triborough Bridge and Tunnel Auth., 485 F. Supp. 2d 453 (S.D.N.Y. 2007) (dismissing plaintiff's ADA claim where plaintiff described the nature of her impairments, but did not explain their severity, duration, or impact) with Capobianco v. City of New York, 422 F.3d 47, 59 (2d Cir. 2005) (finding that a jury could have found a substantial impairment where the plaintiff pleaded the severity of his injury, that the injury could not be corrected, and that the impact is permanent)). Similar to Delgado, Plaintiff alleges that his back pain was severe and limited his ability to perform

---

[7] It is not entirely clear from the Complaint whether Plaintiff returned to work after the March 2008 accident and before returning to duty in July 2010 "after getting his diabetes diagnosis under control." See Compl. ¶¶ 13-20.

certain aspects of his job at the time he was told to go back to work in April 2012, but the Complaint is devoid of any references as to the duration or expected duration of the impairment or whether the impairment is expected to impact Plaintiff's ability to do his job or other major life activities in the long-term. To the contrary, Plaintiff's IME reveals that at the time Dr. Carr determined that Plaintiff was able to return to work, his impairments did not impose a limitation on his ability to work. See IME.

With respect to Plaintiff's diabetes, Plaintiff merely mentions that he was diagnosed with diabetes in 2009, but does not include any factual allegations alleging how his diabetes interfered with his ability to do his job or otherwise impacted a major life activity. See Krikelis, 581 F. Supp. 2d at 485-86 (collecting cases where diabetes is often held not to constitute a disability, particularly if symptoms are sporadic or can be controlled by minor changes in lifestyle.) While diabetes is listed as an impairment that substantially limits endocrine function, see 29 C.F.R. § 1630.2(j)(3)(iii), without any allegations suggesting that Plaintiff's diabetes impacted his ability to work or otherwise impacted a major life activity, the Court finds Plaintiff's diabetes diagnosis insufficient to sustain his ADA claim. Plaintiff's claims regarding his alleged disabilities are best characterized as conclusory, as they merely restate the requirements listed in 42 U.S.C. § 12102. As a result, the Court finds that Plaintiff has failed to state a disability for the purposes of the ADA under this approach.

b. Record of Having an Impairment that Substantially Limits a Major Life Activity

A plaintiff can show a disability for the purposes of the ADA by providing a "record of an impairment that substantially limits one or more major life activities." Skinner v. City of Amsterdam, 824 F. Supp. 2d 317, 327 (N.D.N.Y. 2010). "Records that could potentially contain

this information include education, medical or employment records." <u>Covello v. Depository Trust Co.</u>, 212 F. Supp. 2d 109, 121 (E.D.N.Y. 2002). "The record must be one that shows an impairment that satisfies the ADA; a record reflecting a plantiff's classification as disabled for other purposes or under other standards is not enough." <u>Colwell</u>, 158 F.3d at 645. Even though Plaintiff does not specifically argue that he can satisfy this theory of stating a claim under the ADA, the Court finds that Plaintiff's reference of Dr. Michelle Johnston's opinion that Plaintiff is disabled is insufficient to establish that Plaintiff is disabled under the ADA. <u>See</u> Compl. ¶ 16 ("Plaintiff provided Defendant with medical documentation from Dr. Michelle Johnston, which indicated that Plaintiff was significantly disabled."). Plaintiff did not attach Dr. Johnston's opinion or the accompanying medical records to the Complaint, nor does he explain what standards Dr. Johnston used in reaching her conclusion that Plaintiff was "disabled." Accordingly, Plaintiff's ADA claim fails under the "recorded" disability prong.

### c. Whether Defendant "Regarded" Plaintiff as Disabled

Alternatively, Plaintiff argues that he has pleaded a disability under the ADA because Defendant regarded him as being disabled, "such that there existed a stigma associated with said disabilities." Resp. at 11. Under the "regarded as disabled" approach to stating a disability, the decisive issue is the employer's perception of an employee's alleged impairment. <u>Colwell</u>, 158 F.3d at 646. Under this approach, a plaintiff must show that not only did his employer regard him as somehow disabled, but that they regarded him as disabled within the meaning of the ADA. <u>Id.</u> Under this prong, the focus is on the employer's intent, not whether the employee has a disability. <u>Capobianco</u>, 422 F.3d at 57.

Plaintiff's claim under this theory fails for two reasons. First, the Complaint asserts only the

conclusory allegation that Defendant had an "adverse and stigmatic" perception of Plaintiff because of his disabilities in support of the "regarded as" prong, with no factual material to substantiate this allegation.  See Compl. ¶ 21.  Second, Plaintiff's allegations that Defendant ordered him back to work on two occasions and refused to allow him to return with "light duty" establishes that Defendant did not perceive Plaintiff to be disabled within the meaning of the ADA.  See Capobianco, 422 F.3d at 57.  Consequently, Plaintiff has failed to allege a disability within the meaning of the ADA under any of the three approaches.  Plaintiff's ADA claim is therefore subject to dismissal without prejudice.  Plaintiff will be given the opportunity to submit an Amended Complaint **within thirty (30) days** of the issuance of this Memorandum-Decision and Order.  If Plaintiff fails to submit an Amended Complaint within thirty days, the Court may dismiss this action.

### 2. Title VII Claims

As Defendant points out, Plaintiff's Title VII claims are not precisely clear.  The Complaint includes vague statements that Plaintiff intends to bring claims under Title VII, and that Plaintiff was discriminated and retaliated against, however, it is not clear whether these allegations pertain to Plaintiff's ADA claims or are intended to also assert causes of action under Title VII.  Nevertheless, the Court finds that to the extent that Plaintiff intends to assert claims under Title VII, these claims are insufficiently pleaded.

In order to establish liability on behalf of a municipality for a violation of civil or constitutional rights, a plaintiff must plead and prove that the deprivation of his constitutional rights "was caused by a governmental custom, policy, or usage of the municipality."  Jones v. Town of E. Haven, 691 F.3d 72, 80 (2d Cir. 2012) (citing Monell v. N.Y.C. Dep't of Soc. Servs., 436 U.S. 658,

692 (1978)).  Normally, a single incidence of unconstitutional conduct is insufficient to establish

municipal liability, unless there is proof that the incident was caused by an existing,

unconstitutional municipal policy that can be attributed to the municipal policymaker.  City of

Oklahoma v. Tuttle, 471 U.S. 808, 823-24 (1985); see also Brogdon v. City of New Rochelle, 200

F. Supp. 2d 411, 427 (S.D.N.Y. 2002) ("A single incident by itself is generally insufficient to

establish the affirmative link between the municipal policy or custom and the alleged constitutional

violation.").

       In the present case, the Complaint is devoid of any allegations to suggest that Defendant was

acting pursuant to a municipal policy or custom.  Although Defendant fails to raise Plaintiff's

failure to satisfy Monell as a basis for dismissal, dismissal is appropriate as long as Plaintiff has

notice of the grounds for dismissal and an opportunity to be hear.  Wisoff v. City of Schenectady,

568 F. App'x 28, 29 n.2 (2d Cir. 2014) (affirming district court's sua sponte dismissal of plaintiff's

due process claim where plaintiff had notice and an opportunity to be heard).  Accordingly,

Plaintiff's Title VII claims are dismissed without prejudice, and Plaintiff is afforded the opportunity

to file an amended complaint to assert grounds for imposing municipal liability **within thirty (30)**

**days** of the issuance of this Memorandum-Decision and Order.

## V.      CONCLUSION

       Accordingly, it is hereby:

       **ORDERED**, that Defendant's Motion (Dkt No. 9) to dismiss is **GRANTED**; and it is

further

       **ORDERED**, that the Complaint (Dkt. No. 1) is **DISMISSED in its entirety without**

**prejudice**; and it is further

**ORDERED**, that Plaintiff is afforded the opportunity to submit an amended complaint **within thirty (30) days** of the filing date of this Memorandum-Decision and Order, and it is further

**ORDERED**, that if Plaintiff fails to submit an amended complaint **within thirty (30) days**, the Court, in its discretion, may dismiss the action; and it is further

**ORDERED**, that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**


DATED:      March 16, 2016
            Albany, New York

                              Lawrence E. Kahn
                              U.S. District Judge