UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

ANTHONY HENSEL,

                                       Plaintiff,

    -against-                                          6:15-CV-0374 (LEK/TWD)

CITY OF UTICA,

                                       Defendant.

**MEMORANDUM-DECISION AND ORDER**

**I.    INTRODUCTION**

      Pro se plaintiff Anthony Hensel commenced this action against his employer, the City of Utica, alleging violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, stemming from the denial of his disability benefits and subsequent termination of his employment as a Utica police officer. Dkt. No. 1 ("Complaint"); Dkt. No. 22 ("Amended Complaint"). Presently before the Court is Utica's motion to dismiss the Amended Complaint. Dkt. No. 23 ("Motion"); see also Dkt. No. 23-1 ("Memorandum"). Hensel responded, Dkt. No. 30 ("Response"), and Utica filed a reply, Dkt. No. 33 ("Reply"). After Hensel's counsel withdrew, Dkt. No. 48, Hensel, who now proceeds pro se, was given an opportunity to (and did) file a supplemental response, Dkt. No. 51 ("Supplemental Response"). For the reasons that follow, Utica's Motion is denied.

## II. BACKGROUND

### A. Factual Background[1]

Anthony Hensel worked as a Utica police officer from August 8, 2003, to May 1, 2014. Am. Compl. ¶¶ 6, 11. On March 9, 2008, Hensel experienced "documented injuries to his neck and back" as a result of a work-related accident. Id. ¶¶ 13, 15. Hensel was then put on paid leave or light duty under New York General Municipal Law section 207-c, and he remained in that status for several years. Id. ¶ 13. Hensel was involved in a car accident about three years after the work-related incident, and as a result of these two events, he developed "herniated discs in his cervical and thoracic spine, post concussion syndrome, and pain." Id. ¶¶ 17, 29. These impairments made him unable to "accomplish[] certain job duties, lift[] heavy objects, exercis[e], [or] . . . mak[e] certain movements with his body that would be routine . . . for a non-disabled individual." Id. ¶ 17.

In the fall of 2009, Hensel fell ill. Suppl. Resp. ¶ 22. He experienced "loss of eyesight, excessive urination, excessive thirst, weakness, fatigue, dehydration, excessive dry mouth, and rapid weight loss." Id. Despite receiving treatment for swine flu, Hensel's condition worsened, and he was hospitalized in December 2009 for about one week. Id. ¶ 23; Am. Compl. ¶ 16. Hensel's blood sugar level was "dangerously high at 896, and [he] nearly died." Suppl. Resp. ¶ 24. He was diagnosed with diabetes, but the endocrinologist mistakenly thought Hensel had

---

[1] Because this case is before the Court on a motion to dismiss for failure to state a claim, the allegations of the Amended Complaint are accepted as true and form the basis of this section. E.g., Boyd v. Nationwide Mut. Ins. Co., 208 F.3d 406, 408 (2d Cir. 2000); see also Matson v. Bd. of Educ., 631 F.3d 57, 72 (2d Cir. 2011) (noting that, in addressing a motion to dismiss, a court must view a plaintiff's factual allegations "in a light most favorable to the plaintiff and draw[] all reasonable inferences in her favor").

type-one diabetes and gave him insulin. Id. ¶ 25. Hensel eventually learned that he was in fact a type-two diabetic, and he was given "oral medication" instead. Id. ¶ 26. Hensel eventually got his diabetes under control; he went back to work full time in July 2010, though he again received 207-c status after his car accident on March 14, 2011. Id.; Am. Compl. ¶¶ 16, 27, 29–30. According to Hensel, his diabetes has led to changes in, among other things, his diet and eating times. Suppl. Resp. ¶ 27.

In April 2012, Utica cut off Hensel's 207-c benefits without warning, apparently because it learned of an independent medical examination performed by Dr. Daniel L. Carr that indicated Hensel could return to work. Am. Compl. ¶ 21. Dr. Carr saw Hensel only once for "an exam that lasted no more than 13 minutes," and Utica paid him $10,400 to conduct the examination. Id.; Suppl. Resp. ¶ 11. According to Hensel, Utica ignored or was unaware of the opinions of several other doctors, all of whom found that he had serious physical impairments. Am. Compl. ¶¶ 18–21, 23. After cutting off his benefits, Utica ordered Hensel "back to work 'full time' without light duty." Id. ¶ 30. But Hensel "was in a great deal of pain in his head and neck and back" at this time, and was therefore "unable to return to work." Id. ¶ 24.

Hensel appealed the loss of his 207-c benefits, "and lost in what he considered to be an unfair hearing process conducted by hearing officers whom he considered not to be fair and impartial." Id. ¶ 25. Hensel hired a lawyer to assist with these appeals, and he initiated an Article 78 proceeding, "much of which contained [his] complaints of, among other things, de facto disability discrimination." Id. ¶ 31. Hensel alleges that Utica retaliated against him for his attempt to fight the loss of his 207-c benefits by sending him a letter dated April 7, 2014, "in which [Utica] . . . notified [him] of its intent to terminate his employment as a result of his

3

disability." Id. ¶ 32. While all these events were taking place, Utica knew that Hensel had been diagnosed with diabetes and that his "back and neck-related disability . . . was . . . work-related." Id. ¶¶ 26, 34. Utica officially fired Hensel on May 1, 2014. Id. ¶ 36.

**B. Procedural History**

Hensel filed his Complaint on March 30, 2015, Compl., and Utica filed its first motion to dismiss on May 21, 2015, Dkt. No. 9 ("First Motion to Dismiss"). On March 16, 2016, the Court dismissed Plaintiff's Complaint without prejudice for failure to state a claim. Hensel v. City of Utica, No. 15-CV-374, 2016 WL 1069673, at *10 (N.D.N.Y. Mar. 16, 2016) (Kahn, J.). Hensel amended his complaint on April 7, 2016, Am. Compl., and Utica filed the pending Motion on April 21, 2016, Mot. Utica argues for dismissal of Hensel's ADA claims on the ground that Hensel has failed to allege he was disabled. Mem. at 6–17. After the Motion was fully briefed, Hensel's lawyer moved to withdraw. Dkt. No. 36 ("Motion to Withdraw"). The Court granted the Motion to Withdraw on February 6, 2017, and gave Hensel, who now proceeds without counsel, a chance to supplement his Response or file another amended complaint. Dkt. No. 48. Hensel filed his Supplemental Response on May 8, 2017. Suppl. Resp.

**III. LEGAL STANDARD**

To survive a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A court must accept as true the factual allegations contained in a complaint and draw all inferences in favor of the plaintiff. Allaire Corp. v. Okumus, 433 F.3d 248, 249–50 (2d Cir. 2006). Plausibility, however,

requires "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the alleged misconduct]." Twombly, 550 U.S. at 556. The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. (quoting Twombly, 550 U.S. at 555). Where a court is unable to infer more than the mere possibility of the alleged misconduct based on the pleaded facts, the pleader has not demonstrated that she is entitled to relief and the action is subject to dismissal. Id. at 678–79.

## IV. DISCUSSION

The ADA prohibits employers from discriminating "against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). "Claims alleging disability discrimination in violation of the ADA are subject to the burden-shifting analysis originally established by the Supreme Court [for Title VII claims] . . . ." McBride v. BIC Consumer Prods. Mfg. Co., 583 F.3d 92, 96 (2d Cir. 2009). "A plaintiff must establish a prima facie case; the employer must offer through the introduction of admissible evidence a legitimate non-discriminatory reason for the discharge; and the plaintiff must then produce evidence and carry the burden of persuasion that the proffered reason is a pretext." Sista v. CDC Ixis North Am., Inc., 445 F.3d 161, 169 (2d Cir. 2006).

A plaintiff establishes a prima facie case under the ADA by showing that "(1) his employer is subject to the ADA; (2) he was disabled within the meaning of the ADA; (3) he was

5

otherwise qualified to perform the essential functions of his job, with or without reasonable accommodation; and (4) he suffered an adverse employment action because of his disability." Paxton v. Fluor Enters, Inc., No. 15-CV-3737, 2017 WL 875856, at *3 (S.D.N.Y. Mar. 3, 2017) (quoting McMillan v. City of New York, 711 F.3d 120, 125 (2d Cir. 2013)). A person is disabled under the ADA if he has "(A) a physical or mental impairment that substantially limits one or more major life activities; (B) a record of such an impairment; or (C) [is] regarded as having such an impairment." 42 U.S.C. § 12102(1). The ADA's definition of disability "shall be construed in favor of broad coverage of individuals . . ., to the maximum extent permitted by the [law]." Id. § 12102(4)(A).

"Major life activities" "include[] the operation of a major bodily function, including . . . endocrine . . . functions." Id. § 12102(2)(B). The Equal Employment Opportunity Commission ("EEOC") has promulgated regulations clarifying the ADA's definition of disability, and courts "generally defer to . . . EEOC regulations in construing the ADA's terms." Giordano v. City of New York, 274 F.3d 740, 747 (2d Cir. 2001). According to the EEOC, "the individualized assessment of some types of impairments will, in virtually all cases, result in a determination of coverage [under the ADA]." 29 C.F.R. § 1630.2(j)(3)(ii). As an example of such an impairment, the regulations point to "diabetes[, which] substantially limits endocrine function." Id. § 1630.2(j)(3)(iii). Diabetes is the kind of impairment that, by the EEOC's lights, should "easily" be found to constitute an ADA-qualifying disability. Id. The reason is that the ADA now requires courts to evaluate whether an impairment "substantially limits a major life activity . . . without regard to the ameliorative effects of mitigating measures." 42 U.S.C. § 12102(4)(E)(i); see also Stephen F. Befort, Let's Try This Again: The ADA Amendments Act

6

of 2008 Attempts to Reinvigorate the "Regarded As" Prong of the Statutory Definition of Disability, 2010 Utah L. Rev. 993, 1020 (2010) (noting that before the ADA Amendments Act of 2008 ("ADAAA"), "courts generally found that individuals who could ameliorate the impact of an impairment by means of mitigating measures were not disabled").[2]

Thus, the ADA now requires courts to evaluate diabetes "in terms of its limitations on major life activities when the diabetic does not take insulin injections or medicine and does not require behavioral adaptations such as a strict diet." Rohr v. Salt River Project Agric. Imp. & Power Dist., 555 F.3d 850, 862 (9th Cir. 2009); see also Carol J. Miller, EEOC Reinforces Broad Interpretation of ADAAA Disability Qualification: But What Does "Substantially Limits" Mean?, 76 Mo. L. Rev. 43, 59 (2011) ("Before the ADAAA became effective, courts often concluded that diabetes had to limit other major life activities, such as eating, seeing, or walking, or that the diabetic had to withstand a complex analysis of the degree of insulin administered, activity level, and nature of food intake to establish that a substantial limitation existed."). Given these changes to the ADA's definition of disability, diabetes is now "nearly always a 'disability' under the ADA." Testerman v. Procter & Gamble Mfg. Co., No. 13-CV-3048, 2015 WL 5719657, at *13 n.18 (D. Md. Sept. 29, 2015). Courts applying the current version of the ADA have agreed, finding that a plaintiff can show she is disabled merely by alleging that she suffers from diabetes and takes medication for it. See Richards v. Minnesota, No. 13-CV-3029, 2016

---

[2] Also instructive is the EEOC's admonition that "[t]he primary object of attention in cases brought under the ADA should be whether covered entities have complied with their obligations and whether discrimination has occurred, not whether an individual's impairment substantially limits a major life activity." 29 C.F.R. § 1630.2(j)(1)(iii). Thus, "the threshold issue of whether an impairment 'substantially limits' a major life activity should not demand extensive analysis." Id.

WL 7007487, at *5 (D. Minn. Nov. 29, 2016) (holding that, in light of relevant EEOC regulations, the plaintiff's "diabetes [wa]s an impairment that may constitute a disability under the ADA"); Curran v. Se. Pa. Transp. Auth., No. 13-CV-5919, 2015 WL 1542290, at *5 (E.D. Pa. Apr. 7, 2015) ("Plaintiff alleges that he suffers from diabetes and takes medication for his condition. Endocrine function is a major bodily function that is covered under the definition of disability. . . . [He] therefore almost certainly meets the definition of disability."); Ray v. N. Am. Stainless. Inc., No. 13-CV-46, 2014 WL 1047120, at *4 (E.D. Ky. Mar. 18, 2014) (finding that the plaintiff had sufficiently alleged he was disabled by asserting that he "suffer[ed] from Type I diabetes to a degree that his endocrine system [wa]s substantially limited and require[d] daily medication in order to maintain the functioning of that system"); Tadder v. Bd. of Regents of Univ. of Wis. Sys., 15 F. Supp. 3d 868, 884 n.9 (W.D. Wis. 2014) (noting that EEOC regulations "appear to generally establish diabetes as an impairment imposing a substantial limitation on a major life activity"); Szarawara v. County of Montgomery, No. 12-CV-5714, 2013 WL 3230691, at *3 (E.D. Pa. June 27, 2013) ("Plaintiff alleges, and Defendant does not dispute, that he suffers from Type II Diabetes. . . . Defendant provides no basis for the Court to find that the EEOC's general guidance regarding diabetes is inapplicable to Plaintiff."); see also Michael Edward Olsen, Jr., Disabled but Unqualified: The Essential Functions Requirement As A Proxy for the Ideal Worker Norm, 66 Hastings L.J. 1485, 1496 (2015) ("Courts have almost universally embraced the expansive definition of disability under the ADAAA. As an example, since the passage of the ADAAA, courts have newly acknowledged Type II diabetes and sleep apnea as 'disabilities' under the Act." (footnotes omitted)); Amelia Michele Joiner, The ADAAA: Opening the Floodgates, 47 San Diego L. Rev. 331, 369 n.21 (2010) ("Once an individual

utilizes insulin to control her diabetes, under the ADAAA that individual is automatically considered disabled without regard to the individual's current condition.").[3]

Under this definition of disability, Hensel is clearly disabled. He alleges that he was diagnosed around December 2009 with type-two diabetes. Suppl. Resp. ¶¶ 23, 26.[4] The diagnosis came after he "nearly died" as a result of "blood sugar levels [that] were dangerously high at 896." Id. ¶¶ 24, 27. Hensel eventually got his diabetes under control, thanks in part to "oral medication" he began taking after his diagnosis. Id. ¶ 26. These allegations make clear that Hensel's diabetes substantially impaired his endocrine system, which is a major bodily function (and thus a major life activity) under the ADA. 29 C.F.R. § 1630.2(j)(3)(iii). It bears repeating that the Court is required to consider Hensel's diabetes in its untreated state. 42 U.S.C. § 12102(4)(E)(i). Without his medication, Hensel almost died, and he experienced "loss of eyesight, excessive urination, excessive thirst, weakness, fatigue, dehydration, excessive dry mouth, and rapid weight loss." Suppl. Resp. ¶ 22. In other words, Hensel's untreated diabetes

---

[3] In its previous decision in this case, the Court held that Hensel's diabetes did not render him disabled because he had failed to allege that it "impacted his ability to work or otherwise impacted a major life activity." Hensel, 2016 WL 1069673, at *9. The Court pointed to Krikelis v. Vassar College, 581 F. Supp. 2d 476, 485–86 (S.D.N.Y. 2008), which collected cases in which courts had found diabetes not to constitute a disability on the ground that the symptoms were sporadic or could be controlled by minor changes in lifestyle. Hensel, 2016 WL 1069673, at *9. The cases collected in Krikelis were decided before the ADAAA substantially expanded the ADA's definition of disability. 581 F. Supp. 2d at 485–86. And the Court's invocation of Hensel's "ability to work" suggests a return to the pre-ADAAA approach to impairments such as diabetes. Thus, the Court apparently applied the wrong standard to Hensel's diabetes.

[4] The Court supplements the allegations in Hensel's Second Amended Complaint with those made in his Supplemental Response. See Richard v. N.Y.C. Dep't of Educ., No. 16-CV-957, 2017 WL 1232498, at *8 (E.D.N.Y. Mar. 31, 2017) ("Because Plaintiff is proceeding pro se, the Court considers the allegations despite the fact that they were raised for the first time in Plaintiff's opposition to the motion to dismiss.").

was seriously interfering with the proper functioning of his endocrine system. There is thus no doubt that on these facts, Hensel's impairment—which, in its untreated state, nearly killed him—made him disabled under the ADA. Since Utica moves to dismiss solely on the ground that Hensel fails to allege a disability, Mem. at 6–17, the Court denies its Motion.[5]

## V. CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that Utica's second motion to dismiss (Dkt. No. 23) is **DENIED**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

DATED:   June 14, 2017
         Albany, New York

_____
Lawrence E. Kahn
U.S. District Judge

---

[5] In its Reply, Utica argues that the Court should dismiss Hensel's ADA retaliation claim. Reply at 4. The Court declines the invitation. See, e.g., Schuh v. Druckman & Sinel, L.L.P., 602 F. Supp. 2d 454, 465 (S.D.N.Y. 2009) ("Because this argument was made for the first time in the reply brief, we decline to consider it."). Further, because the Court finds that Hensel's diabetes made him disabled under the ADA, it need not reach the question whether his other impairments also constituted ADA-qualifying disabilities.